[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the assessment of damages in the amount of $10,000 paid by the defendant for the partial taking bar eminent domain on March 20, 1989, of the plaintiffs' land situated on the westerly side of Snipsic Street (Route 74) in the Town of Vernon for the layout, alteration, extension, widening, change of grade and improvement of the highway.
The parcel taken consists of a rectangular strip across the entire front of the property, being 100 feet on the present street line, 10 feet on the southern property line, 105 feet on the taking line, and 7 feet on the northern property line, containing 0.019 of an acre. In addition to this fee interest, the defendant took a full and perpetual easement to slope for the support of the highway within an area of 0.002 of an acre CT Page 228 located between and opposite Stations 15+03 and 15+50 left, center line of the present Snipsic Street. In addition, the defendant took the following temporary rights until completion of the worst (1) a right to install a sedimentation control system within a distance of 10 linear feet and located between and opposite Stations 15+40 and 15+50; and (2) a right to grade, constrict driveway, retaining wall and concrete walks within particular areas covering 0.051 of an acre and located between and opposite Stations 14+30 and 15+52.
The property is located in a Residence 10 zone. It contains a 5-room ranch style dwelling, erected in 1957, with a parking, area and driveway to the rear, in that order, to the north. The lot is large in size, being, 2.61 acres, but long and narrow. The lot slopes downgrade from the street and there is a walkout basement door in the rear. The exterior of the dwelling is in good condition and its appearance shows good maintenance and upkeep. Prior to the taking, the front yard pitcher from the house to the road. The panting area as similarly pitched. The driveway adjoining the parking area to the north, however, was sloped downward for access to the rear of the property.
Using the market data approach, the plaintiffs' appraiser valued the market price before the talking at $150,000. Fair market value after the taking was found by him to be $120,000, resulting in damages of $30,000. In addition to the consequential damages caused by the permanent and temporary takings by the defendant, the appraiser concluded that the value of the remaining property as also adversely affected by the physical consequences of the condemnation constituting severance damages.
The appraiser found that the dwelling was now approximately 8 feet closer to the street line and the front yard became non-conforming, matters that impact negatively on value. The required building setback line is 30 feet. At the time the house was built and until December 15, 1988, the setback line was 20 feet. After the taking the house is only 12 feet from the street line, that is, 18 feet less than is now required. In addition, a deep row of blue spruce trees, cut to hedge height, along the former public sidewalk in the area of the taking was removed. This detracts from the appearance of the home from the street side and destroyed its former privacy from passersby who are now closer to the windows and front door. Similarly, traffic, expected to be increased and flowing closer to the home by the highway improvement, will adversely affect the desirability and value of the property.
The grade of the new highway was raised above that of the former read. Because of this heightened roadway, the taking changed the slope of the front yard from a positive downward grade from house to road to a reverse negative grade with a greater pitch from road to house. This downgrade is intensified by the shortness of its length, 12 feet from road to house. The taking also increased the slope of the driveway to the rear yard. The plaintiffs' appraiser anticipated difficulty in marketing this property in the future because of the closeness of the dwelling to the street, its CT Page 229 loss of privacy and the steepness of the grade from the new sidewalk to the home. In his opinion, it was a "different" property after the taking.
The defendant's appraiser made two appraisals. In the first, dated November 7, 1988, four and one-half months before the taking, he valued the square foot as of the land then at $8.00 per square foot, for a total of $6,600 for 828 square feet. A contributory of $2,500. was allocated to loss of improvements. The easement was valued at $200 and the rights at $700. In this manner he valued the total taking at $10,000.
This valuation was based on a poor comparison of values. The square foot value was derived from comparable sales of residential lets. The shortcoming to such a valuation was that the appraiser was applying the square foot value of whole lot areas to the square foot area of the frontage of the subject property without adjustment for quality of residential land area. Whole lot valuations average the cheaper rear or back lot areas with the more expensive and valuable front area. The area taken here consisted of the entire street frontage of the plaintiff's house lot, the most valuable portion of the lot, to a depth of 7 to 10 feet. Since the easement area was valued at 25% of the square foot value, that also was a low valuation.
The second appraisal was made for the defendant as of the date of the taking. On this occasion he considered the direct sales comparison approach to be the best method to estimate the fair market value of the property. Based on three residential sales in Vernon, he found the before taking value of the subject property to be $140,000. In estimating the fair market value of the property after the taking, he used the same three comparable sales and valued the remainder at $130,000. In this second appraisal the damages to the plaintiffs resulting from the taking were also found to be $10,000. In both of these appraisals the defendant's appraiser included severance damages.
In viewing the property, the court made an observation not previously notes by the appraisers either in their valuation reports or in their testimony large metal drain has been installed in the lawn in the approximate center of the front yard on each side of the front walkway. These are reportedly connected to the storm drains in the highway. The obvious purpose of these drains is to intercept the flow of surface mater running from the street toward the foundation of the plaintiffs' home while this improvement is of benefit to the plaintiffs made necessary only by the taking, it also emphasizes the importance to all parties of the chance in grade and its physical consequence. Additionally, it detracts from the aesthetics of the downslope toward the house. Of further significance is the fact that a review of the certificate of taking and the taking map referenced therein apparently do not show the installation of these drains on the plaintiffs' property or the authority for such. They cannot, therefore, be considered in the evaluation of the damages resulting from the defendant's taking. CT Page 230
It is the charge of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witnesses, this knowledge of the elements that establish value and a viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 388
(1989). In performance of this duty, I find that the before taking value of the subject property was $150,000, and that the after taking, value is $130,000. Damages, therefore, are assessed at $20,000.
Judgment may enter for the plaintiffs in the amount of $20,000, less $10,000 already paid, or an excess of $10,000, with interest on such excess from the date of taking to the date of payment, together with costs, and a reasonable appraisal fee of $800.
WILLIAM C. BIELUCH STATE TRIAL REFEREE